LAWRENCE E. BARTLETT
*vs.*
BURTON L. NEWTON

Oxford.    Opinion, November 11, 1952.

*William E. McCarthy,* for plaintiff.

*Gerry Brooks,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.    Defendant's exceptions, to the admission of evidence, a particular instruction given to the jury (not perfected as hereafter noted), and the refusal of fifteen requested instructions, must all fail if the evidence challenged was properly admitted.   That evidence related to the claim of the plaintiff that by prearrangement with the defendant he was entitled to pay a note, secured by chattel mortgage, by yarding a stated amount of cordwood instead of in money.

The action is trover.   The taking of the property alleged to have been converted is not denied by the defendant, who justifies his taking as proper, in foreclosing his mortgage. The mortgage covered, specifically, a tractor purchased earlier by the plaintiff under a conditional sales agreement, with certain equipment identified therein but not described in the mortgage.   Defendant's claim is that the recital that the mortgaged property was subject to a conditional sales agreement, identified in the mortgage, gave him a lien on

all the property purchased under the agreement. The verdict brought under review indicates that the jury decided factually that the parties had made the trade to which the plaintiff testified, prior to or contemporaneously with the execution of the note and chattel mortgage, and that the plaintiff had performed the service it involved prior to the maturity of the note. Defendant challenges, also, the sufficiency of the evidence to justify that verdict, by general motion for a new trial carrying the usual allegations.

The motion is not sustainable. The record carries ample competent evidence, if it was admissible, as it was, to support the verdict. Defendant's real claim in this connection is that the plaintiff's testimony:

"puts a heavy strain upon the most optimistic credulity",

as was said in *Liberty* v. *Haines*, 103 Me. 182, 68 A. 738, and should have required proof of a "clear, convincing and conclusive" nature not supplied. Reference to that case and the authorities reviewed in it provides no support for the defendant. The necessity for credulity is more than eliminated by examination of the note itself. A recital therein, immediately following its promise "to pay * * * in 60 days" and prior to the recital "and interest annually until paid," is that the sum named is to be "collected from Wheeler Brothers account at Newton & Tebbetts mill at West Bethel." This indicates conclusively that when the note was given it was contemplated by the parties that it might be paid in some manner other than by the handing of cash to the payee by the maker. In this connection it is perhaps worthy of note that counsel for the defendant, presenting fifteen written requests for special instructions touching each and every other aspect of the case, asked for no amplification of the instructions given the jury on the burden of proof resting upon the plaintiff.

The case was before this court heretofore on report, submitting it "for the rendition of such judgment as the law and the evidence require, upon so much of the latter as is legally admissible." *Bartlett* v. *Newton,* 147 Me. 185, 84 A. (2nd) 679. That report was discharged on the ground that the only issue involved was one of fact which should be resolved by a trier of facts:

> "passing upon the credibility of witnesses giving testimony sharply conflicting, after having the benefit of observing them on the stand."

There can be no point in setting out in full the several requests for instructions. Six of them, in varying language, raise the identical issue asserted by the defendant in objecting to the admission of evidence concerning conversations between the plaintiff and the defendant at or prior to the time when the note and mortgage were executed, on the ground that whatever was said was "merged in the note" and conversations could not be proved "to vary the terms" thereof. Reliance, of course, is on the established principle of law, as briefly stated in Greenleaf's Evidence, that:

> "parol contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument."

As more fully stated by the same authority, Sec. 275, Thirteenth Edition:

> "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement * * * was reduced to writing; and all oral testimony of a previous *colloquium* * * * conversations or declarations at the time * * *, as it would tend * * * to substitute a * * different contract * * *, to the prejudice, possibly, of one of the parties, is rejected",

quoted, almost verbatim, from *Stackpole* v. *Arnold*, 11 Mass. 27 at 30, 6 Am. Dec. 150. That writer, thereafter, however, asserted both that:

> "Parol evidence is admissible to explain that which is *per se* unintelligible, such explanation not being inconsistent with the written terms",

and that:

> "To ascertain the meaning of words used it is obvious that parol evidence of extraneous facts and circumstances may in some cases be admitted to a very great extent, without in any way infringing the spirit of the rule."

The foundation for the rule itself is stated more fully in 1 Jones on Evidence, Sec. 434, quoting verbatim the declaration of Stephen's Evidence, Art. 90, as follows:

> "When any * * * contract * * * has been reduced to the form of a document * * * no evidence may be given of * * * the terms of such contract * * * except the document itself, or secondary evidence of its contents in cases in which secondary evidence is admissible * * *. *Nor may the contents of any such document be contradicted, altered, added to or varied by oral evidence.*"

The closing sentence of that statement of the rule is emphasized herein because it supplies the reason ascribed by Greenleaf to the rule itself—that one of the parties might be prejudiced if a "different contract" (from the one signed) was proved. It explains, also, why oral testimony may be admitted to explain the meaning of words, or their use, without infringing the spirit of the rule.

Decided cases and other recognized authorities make it apparent that there is a great difference between executory contracts and executed ones when parties have contracted that the maker of a note may pay it in some manner other than in currency. *Crosman* v. *Fuller,* 17 Pick. 171; *Bu-*

*chanon* v. *Adams,* 49 N. J. L. 636, 10 A. 662, 60 Am. Rep. 666; *Patrick* v. *Petty,* 83 Ala. 420, 3 So. 779; *Consolidated Oil Co.* v. *Schaffner,* (Tex. Civ. App.) 286 S. W. 258—aff. 293 S. W. 159; *Braly* v. *Henry,* 71 Cal. 481, 60 Am. Rep. 543; 3 R. C. L. 1284, Sec. 516; 8 Am. Jur. 482, Sec. 835; 10 C. J. S. 981, Sec. 446. The Massachusetts, New Jersey and Texas cases, the two latter cited in American Jurisprudence, make it clear that executed contracts providing for the payment of a note in something other than money constitute payment, and a defense against any action thereon. The distinction between executory and executed contracts in this regard is well drawn in such cases as *Richardson* v. *Cooper,* 25 Me. 450, and *Cushing* v. *Wyman,* 44 Me. 121, the latter presenting a considerable review of authorities. A most excellent statement of the rule and its qualifications was made in *Patrick* v. *Petty, supra,* as follows:

> "When there is a promissory note, or other written obligation to pay money, and contemporaneously there is an oral agreement that the obligation is to be discharged by the doing of something other than the payment of money, so long as the contemporaneous, oral agreement remains executory, it is wholly inoperative, and no defense whatever to a suit on the obligation. When, however, the collateral, oral agreement has been performed, it becomes a complete cancellation and discharge of the written obligation, and a defense to an action brought to recover money. This is payment, not in money, but in something else, agreed to be received, and received as a substitute for money."

Such are the facts as the jury found them to be in this case.

Three additional requests for instructions relate to the fact that the note was a personal transaction between the plaintiff, an employee of the Wheeler Brothers named in the note, and the defendant, who was the president of Newton & Tebbetts, Inc., a corporation identified therein as "New-

ton & Tebbetts," and that while one of the partners in Wheeler Brothers signed the note as a joint maker with the plaintiff, he had no authority to bind the partnership (in that manner) and the defendant was not authorized to make the trade to which the plaintiff testified on behalf of his corporation. That Wheeler Brothers might have objected if Newton & Tebbetts, Inc., had attempted to charge the note to them, as it did not, or that Newton & Tebbetts, Inc., might have refused to pay the plaintiff the agreed price for yarding cordwood, and there was no evidence it did, is not material in litigation between the present parties, the maker and payee of the note which never passed to other hands. The accounting presented by the defendant between his corporation and Wheeler Brothers makes no mention of any cordwood yarded by the defendant.

Before alluding to five additional requests for instructions, four of which will be disposed of collectively in considering an instruction given the jury, to which an exception was taken that is not perfected in the Bill of Exceptions, special mention should be made of that reading:

> "If the jury finds there was an agreement binding on the parties that plaintiff was to be allowed six dollars a cord for yarding such wood, the plaintiff cannot recover unless the evidence satisfies the jury and they find that plaintiff did yard one hundred cords of such wood."

In substance that instruction was more than amply given. The justice presiding advised the jury that there should be a finding for the plaintiff if his story that the money was loaned with the understanding that it was to be repaid by labor in the woods was believed, and that by reason of it:

> "he within a short space of time went onto those premises and yarded over a hundred cords of wood, and that being true that his obligation was met, the note was paid and that the mortgage was of no effect",

and stated thereafter, the requirements of the burden of proof having been explained, that if the plaintiff:

> "has sustained the burden of proving that contract (the one to which he had testified) and his performance"

thereof (the yarding of the cordwood), he would be entitled to recover (because the mortgage the defendant assumed to foreclose was not in effect at the time his action was taken).

Four of the remaining exceptions are meaningless to the issue, in view of the jury finding relative to the oral contract and its performance. The exception not perfected, as heretofore noted, was that the jury must find for the plaintiff in some amount because the tractor equipment identified in the conditional sales agreement, and not mentioned in the mortgage, was not covered by the latter. The four instructions here treated collectively raise the same issue. They cannot be material in view of the fact that the jury found that the note had been paid. Under such circumstances the mortgage furnished no justification for taking any of the property by foreclosure.

This leaves for consideration the tenth request for instruction, which was, in effect, that if the jury should find for the plaintiff, allowance must be made for the unpaid purchase price due under the conditional sales agreement. This was not pressed by the defendant, and might be regarded as waived, no authority having been offered for its support. It is obvious, however, that as a matter of defense in mitigation of damages the burden rested upon the defendant to prove the amount. The record carries no evidence on the point other than the general statement of a representative of the conditional sales vendor, at the first trial of the case, that "about four thousand dollars, a little less" had been paid on the purchase price, leaving "a couple

of thousand dollars due" (made a part of the present record by stipulation), and the affirmation of the plaintiff at the retrial after that statement was read to him, that, as far as he knew, "there was two thousand dollars" still due. Notwithstanding that the principle which fixes the measure of damages in trover as the value of the property converted at the time of its conversion, with interest from the date thereof, is so well established as to require no citation of authority, we cite *Brown* v. *Haynes*, 52 Me. 578, because it decides so squarely that one who converts property is entitled to no deduction from the usual measure of damages because a third person had made payments to the owner under a conditional sale by which no title passed. We know of no reason why a converter of property of the value of $6,500, the present verdict, by the foreclosure of a mortgage securing $581.40, the amount secured, after the debt had been fully paid, should be entitled to any deduction because of a debt outstanding against the property converted, held by another.

*Motion and exceptions overruled.*