## MILLERMAN et al. v. WALTON et al. (No. 6923.)

(Court of Civil Appeals of Texas. Austin. Nov. 25, 1925.)

**1. Brokers ⬤⟹85(1) — Conversation between purchaser and owner admissible as bearing on fraud and bad faith in withdrawing property from brokers.**

Testimony of owner as to conversation, wherein he told purchaser that property had been listed with brokers but that he had taken it out of their hands, *held* proper, as showing pertinent facts leading up to sale to enable jury to pass upon issue of fraud and bad faith in withdrawing property from brokers.

**2. Brokers ⬤⟹85(1)—Testimony of conversation between purchaser and owner held admissible on issue of fraud in withdrawing property from brokers.**

In broker's action for commission, testimony of purchaser that he told owner he could not afford to pay for property, but later asked him if he had decided to take a certain amount for it, *held* admissible on issue of fraud charged against owner in withdrawing property from brokers.

**3. Evidence ⬤⟹471(3) — Testimony held not conclusion but rather recital of facts.**

In action to recover commission for sale of lots, sold by owner after withdrawal from brokers, testimony of purchaser that he told owner he could not afford to pay for property, and that he would not buy, but later concluded otherwise, and asked owner if he had decided to take a stated amount, *held* not inadmissible as conclusion as to any ultimate fact in issue, but was rather a recital of facts.

**4. Evidence ⬤⟹151(1) — Abandonment is as much a matter of intention as of outward acts.**

Abandonment of an undertaking is often as much a matter of intention as it is of outward acts, and, when such element is present, a witness may so state his intention as a fact.

**5. Brokers ⬤⟹85(1)—Testimony that owner did not know of broker's negotiations with purchaser admissible on question of fraud in withdrawal and sale.**

In action to recover commission for sale of lots, where fraud was charged against owner in withdrawal of property from broker and in sale to purchaser, testimony that owner knew nothing of broker's negotiations with purchaser was admissible on both of such questions.

**6. Brokers ⬤⟹85(2, 3)—Testimony that owner did not know brokers had negotiated with purchaser admissible on question whether brokers had found purchaser and whether they were procuring cause of sale.**

In action to recover commission on lots, testimony of owner that he did not know brokers had negotiated with purchaser is admissible on question as to whether brokers had found purchaser ready, able, and willing to buy, and as to whether they were procuring cause of sale.

**7. Brokers ⬤⟹88(14)—Findings of jury that brokers did not find purchaser and were not procuring cause of sale, supported by evidence, defeated right to recovery.**

In action to recover commissions for sale of lots, where issue of good faith of owner in terminating brokers' agency was decided in favor of owner, findings that brokers did not find purchaser and were not procuring cause of sale and that owner sold property, supported by evidence, defeated brokers' right to recover.

Appeal from District Court, Navarro County; Hawkins Scarborough, Judge.

Action by J. S. Millerman and another against T. J. Walton and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

Harris & McWilliams, of Corsicana, for appellants.

Jester & George, of Corsicana, for appellees.

BAUGH, J. J. S. and J. A. Millerman sued T. J. and Neal Walton for $700, claimed as commissions on the sale of a lot in Corsicana to R. J. Jackson et al. The Waltons defended substantially as follows: That T. J. Walton neither owned nor asserted any interest in the lot; that the property was listed with Millerman Bros. to sell within a limited time; that they failed to sell same within that time; that the defendant Neal Walton thereupon withdrew his property from them and took it off the market; and that subsequently thereto he sold same to the Jacksons through his own individual efforts, and without any knowledge that the Millerman Bros. and ever negotiated a sale with Jackson. By supplemental petition, plaintiffs pleaded that they were the procuring cause of the sale, and that such withdrawal, if made, was fraudulent on the part of the Waltons and for the purpose of defeating plaintiffs' right to a commission. The case was submitted to a jury on special issues, on all of which they found against the plaintiffs. The court thereupon rendered judgment that plaintiffs take nothing, from which they prosecute this appeal.

[1] Appellants' first assignment and proposition complain of the admission of Neal Walton's testimony as to the conversation between him and R. J. Jackson, in absence of the appellants, in which Walton told Jackson that he had had the property listed with Millerman Bros. for sale at $15,000, but that he had taken same out of their hands and off the market some two weeks before that time. Their contention is that such statements were self-serving and not binding upon appellants. Ordinarily this would be true. But Neal Walton, R. J. Walton, and J. S. Millerman himself, all testified that Neal Walton had taken this property out of Mil-

lerman Bros.' hands before the sale was made. This being an undisputed fact, appellants cannot complain that Walton so stated it to Jackson. So far as the remainder of the conversation was concerned, appellants having charged Walton with fraud and bad faith in withdrawing the property from them, Walton was entitled to show all the pertinent facts, circumstances, conversations between him and Jackson, and the negotiations leading up to the sale, to enable the jury to properly pass upon that issue.

Appellants' second assignment and proposition thereunder complain of the admission of the testimony of R. J. Jackson, as follows:

"I told him (meaning Neal Walton) that we couldn't afford to pay that for it, and I came back and discussed it with my brother, and we decided to dismiss the purchase of that property from our minds. About two weeks following that, I think it must have been about that time, things began to look a little better; then we decided that we had better fortify ourselves with a business home, and I went back to Mr. Walton again and asked him if he had decided to take $13,000 for that lot."

[2-4] The contention is that such testimony was merely a conclusion of the witness on the issue of whether the Millermans were the procuring cause of the sale or whether same was made under a new and independent transaction, citing Lumsden v. Jones (Tex. Civ. App.) 205 S. W. 375, and numerous other authorities. We do not so find. Jackson's testimony was admissible on the issue of fraud charged against Walton in any event. Nor was it a conclusion as to any ultimate fact in issue, as was true in the cases cited. On the other hand, the testimony is rather a recital of facts. Abandonment of an undertaking is often as much a matter of intention as it is of outward acts, and, where such element is present, a witness may so state his intention as a fact.

What we have said under the first and second assignments also disposes of the third assignment and proposition thereunder, relating to Jackson's testimony as to what Neal Walton told him about withdrawing his property from the market. This testimony was admissible on the issue of fraud.

[5, 6] Appellants' fourth assignment complains of the trial court's refusal to instruct the jury that all testimony to the effect that Walton knew nothing of Millerman Bros.' negotiations with Jackson must be confined to the question of good faith of Neal Walton in undertaking to withdraw the property from the hands of Millerman Bros. There was no error in this. Walton pleaded that he reserved the right to sell the property himself. In addition, fraud was charged against him, both in the *withdrawal* of the property from Millerman Bros. and in its *sale* to Jackson. The testimony was admissible on both these questions, and not merely on the question of withdrawal. Jackson tes-

tified that, when Millerman Bros. priced the property to him they did not advise him that Walton owned it, and that he later found out from other sources, after his negotiations with Millerman Bros. had ceased, that Walton owned the property. Walton testified that at no time, until after he had conveyed the property to Jackson, did he ever know that Millerman Bros. had ever negotiated with them. This was contradicted by Millerman Bros. it is true, but, in the light of the other testimony, we think such testimony was, in the case at bar, admissible on both the issues as to whether Millerman Bros. found a purchaser ready, able, and willing to buy, and also as to whether they were the procuring cause of the sale, having never brought the parties together in any manner. We are familiar with the rule laid down in Graves v. Bains, 78 Tex. 92, 14 S. W. 256; McKinney v. Thedford (Tex. Civ. App.) 166 S. W. 443, and the other cases cited by appellants. But, as stated in Graves v. Bains, where the broker does not disclose to his principal the name of the purchaser, "it must appear that the purchaser was induced to apply to the owner through the means employed by the broker." In the instant case this was expressly denied by the purchaser himself; hence the cases cited are not applicable here.

The following special issues, as answered by the jury, in our opinion conclusively dispose of the case:

"Question No. 7. Did Millerman Bros. find a purchaser for said property, who was ready, willing, and able to purchase said property at a price satisfactory to Neal Walton? Answer 'Yes' or 'No.' Answer: 'No.'

"Question No. 8. Were the Millerman Bros., or either of them, the procuring cause of said property being sold by Neal Walton to R. J. Jackson? Answer 'Yes' or 'No.' Answer: 'No.'

"Question No. 9. Did Neal Walton sell said property to R. J. Jackson as a result of his own efforts, and independent of any negotiations had by Millerman Bros. with R. J. Jackson, and without any knowledge thereof? Answer 'Yes' or 'No.' Answer: 'Yes.' "

[7] There was no objection to the form of these questions, nor is there any contention that the evidence was not amply sufficient to sustain the findings of the jury. The issue of good faith of Neal Walton in terminating Millerman Bros.' agency, on which issue the testimony complained of was admissible, was also specifically submitted to the jury and answered by them against appellants. With that issue, which was in fact the chief issue in the case, disposed of, the findings in answer to questions 7, 8, and 9 above, supported by adequate competent testimony, defeat appellants' right to a recovery.

What we have said makes it unnecessary to consider appellants' fifth assignment complaining of the testimony of T. J. Walton that he did not own any interest in the lot

or have anything to do with it. In any event, this issue was concluded against appellants by special issue No. 2, to which no objection was made at the time, and about which no complaint has been made.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.